# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARISTEDES MARTINEZ,

                Plaintiff,

    v.

FOX BROADCASTING CO., *et al.*,

          Defendants.

CIVIL ACTION

No. 06-04537

Pollak, J.                                                    September 30, 2008

## OPINION

Plaintiff Aristedes Martinez brought this action against his former employers, defendants Fox Broadcasting Co. and Fox Television Stations, Inc., d/b/a WTXF29, Philadelphia (collectively, "defendants") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et. seq.*; the Pennsylvania Human Relations Act ("PHRA"), 43 P.C.S. § 951 *et. seq.*; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.* Plaintiff alleges he was harassed, retaliated against, and eventually terminated from his employment because of his race, national origin, and age. Before the court is defendants' motion for summary judgment. For the reasons that follow, the court will grant the motion.

## I.

Plaintiff, who was born in Bogota, Colombia, in 1932, has worked as a video

-1-

editor in the film and television industries for many years in locations including New York, Washington D.C., and Philadelphia.  Pl.'s "Certification," ¶¶ 2, 6-16.  Defendants hired plaintiff as a video editor in 1996, when he was sixty-four years old.  Pl.'s Dep. at 82, 84, 164.  Plaintiff initially edited the morning news program "Good Day Philadelphia" and was re-assigned to "The Ten O'Clock News" in 2001.  Pl.'s Cert., ¶¶ 22, 35.

Throughout plaintiff's employment with defendants, he received warnings and other signs that his employers had concerns regarding his editing mistakes and problems working cooperatively with others in the office.  From 1997 through 1999, the chief photographer consistently evaluated Plaintiff's performance as adequate, praising plaintiff's technical skills but critical of his difficulties with interpersonal relationships.  Pl.'s Cert., Exs. 9-11.  Each of the three available appraisals categorized him as "Performance MEETS," a standard rating falling below "Performance EXCEPTIONAL" and "Performance EXCEEDS," but above "Performance DOES NOT MEET."  *Id.*  These evaluations ceased when plaintiff and the other video editors employed by defendants gained union representation in 2000.  Pl.'s Dep. at 184.  Though no longer memorialized in formal evaluations, defendants' concerns with plaintiff's work product and performance were documented in warning letters sent to plaintiff from his supervisors, Luke Funk and Scott Matthews.   Defs' Exs. 18-21.

Plaintiff was issued a warning on July 11, 2003 for an editing mistake that had resulted in the wrong tapes being aired during a newscast.  Def.'s Ex. 18.  Another

warning was issued on September 17, 2003, documenting editing mistakes that had

occurred since the July 11 warning.  Defs.' Ex. 19.  The third warning, on November 18,

2003, concerned a mistake in editing as well as plaintiff's tardy arrival at work on the day

the mistake occurred.  Defs.' Ex. 20.  Defendants issued plaintiff the final warning when

he did not show up for work on Super Bowl Sunday in February 2004.  Defs.' Ex. 21.

Defendants issued this warning after a phone message was left at plaintiff's home to

remind him that he was scheduled to work that day and he still failed to appear.  *See* Pl.'s

Dep. at 424, 430 (stating that he "forgot to show up on Super Bowl Sunday").  With

regard to the editing mistakes, plaintiff contends that other employees contributed to his

editing failures, and he argues that defendants should not have punished him for his

mistakes because it was his supervisors' job to "catch [his] mistakes" before they were

aired on television.  Pl.'s Dep. at 399.

 In addition to these performance-related issues, plaintiff had several interpersonal

conflicts with other employees.  As early as 1998, a female co-worker complained that

plaintiff threatened to hit her.  This allegation was documented in plaintiff's 1998

performance evaluation, which stated that plaintiff's "demeanor . . . was unacceptable."

Pl.'s Dep. at 272-73.  Subsequent evaluations noted that plaintiff "still needs to work on

handling conflicts and situations without raising antagonism or hostility," "needs to get a

handle on accepting constructive criticism," and needs "to work on gaining control over

job pressures when dealing with coworkers."  Def.'s Ex. 16.  Plaintiff also clashed with

another video editor, Jamel Northern.  Pl.'s Br. at 19.  Plaintiff asserts that he was the victim of Northern's harassment, violence, and "often abusive-contentious behavior."  *Id.* In response to these problems with his co-workers, plaintiff sent a letter to Larry DelSpechio, a business agent of IBEW Local 98, the video editors' union.  In this letter, dated November 29, 2003, plaintiff gave "a detailed account of the issues of concern relating to working conditions."  Pl.'s Br. at 14; Ex. 23.  However, DelSpechio "ignored plaintiff's letter" and "never contacted [plaintiff's] managers."  Pl.'s Br. at 14; Pl.'s Dep. at 214-16; DelSpechio Dep. at 88-89.

Plaintiff subsequently insulted a co-worker, calling her "a bitch" and "the devil." Pl.'s Dep. at 435-37.  When this employee filed a complaint with the defendants' Director of Human Resources, plaintiff refused to cooperate in the ensuing investigation into the incident.  Pl.'s Dep. at 436-37, 460-63, 465-66.  Plaintiff also copied the complaining employee on an email to his supervisors and human relations officers wherein he referred to the employee as a "pushover victimizer" who had engaged in "devastating behavior." Defs.' Ex. 24.  He was suspended on April 21, 2004 pending the results of the investigation and then terminated upon its closing on May 4, 2004.  Pl.'s Dep. at 475; Defs.' Exs. 25, 28.

After being terminated, plaintiff filed claims with both the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission; the latter granted him a Notice of Right to Sue.  Pl.'s Ex. 31.  He then brought this suit *pro se* under

-4-

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et. seq.*; the Pennsylvania

Human Relations Act ("PHRA"), 43 P.S. § 951 *et. seq.*; and the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.* He claims discrimination on the

basis of his race, national origin, and age, and he also claims retaliation and harassment.

This court has jurisdiction with respect to the federal claims under 28 U.S.C. § 1331 and

supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

**II.**

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c); *IFC Interconsult, AG v. Safeguard

Int'l Partners, L.L.C.*, 438 F.3d 298, 317 (3d Cir. 2006).  Facts are material if they "bear

on an essential element of the plaintiff's claim." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337

(3d Cir. 2002) (quoting *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999)).  Further,

there is a genuine issue of material fact if "a reasonable jury could find in favor of the

nonmoving party." *Id.*  In other words, a dispute over facts is material where it could

affect the outcome of a case. *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003).

The record should be viewed in the light most favorable to plaintiff, the non-moving

party. *Fakete*, 308 F.3d at 336.

A party seeking summary judgment carries the initial burden of informing the

court of the basis for its motion and identifying the portions of the record that show that there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Belitskus*, 343 F.3d at 639. In this instance, the non-moving party would bear the burden of proof at trial. Consequently, the moving parties must show that the non-moving party cannot support his case with the evidence in the record. *Celotex*, 477 U.S. at 325. To rebut, the non-moving party must identify facts that create a genuine issue of dispute for trial. Fed. R. Civ. P. 56(e); *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**III.**

Defendants have moved for summary judgment on plaintiff's complaint in its entirety. Defendants first argue that plaintiff cannot establish a *prima facie* case of discrimination and further argue that even if he has established a *prima facie* case he cannot point to any evidence that defendants' proffered non-discriminatory reasons for his termination were pretextual. Defendants also argue that plaintiff cannot establish a *prima facie* case of retaliation or harassment. Finally, defendants contend that even if the court finds their conduct actionable, plaintiff is not entitled to damages because he failed in his duty to mitigate.

**A.  Discriminatory Discharge**

This court may apply a single Title VII analysis to all of plaintiff's discrimination claims.  *See Gomez v. Allegheny Health Serv., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) ("The [PHRA] is construed consistently with interpretations of Title VII."); *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir. 1995) ("the methods and manner of proof under one statute should inform the standards under the others as well . . . we routinely use Title VII and ADEA caselaw interchangeably . . . .").

Under the Title VII analysis, a plaintiff may survive summary judgment by showing either direct or indirect evidence of discrimination.  *Fakete*, 308 F.3d at 337-39. If a plaintiff shows direct evidence of discrimination, he need not demonstrate anything further in order to survive summary judgment.  However, a plaintiff attempting to prove discrimination with direct evidence confronts a "high hurdle."  *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998).  The evidence must demonstrate that the "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision."  *Connors*, 160 F.3d at 976 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).  Direct evidence can be described as being "so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production." *Connors,* 160 F.3d at 976 (citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994)); *see also Anderson v. Consol. Rail Corp.* , 297 F.3d 242, 248 (3d Cir. 2002).

Here, plaintiff offers almost no direct evidence of discrimination by a decision maker.  Rather than relying on the actions of decision makers (his superiors), plaintiff instead points to the attitudes and remarks of his co-workers to support most of his allegations.  Stray remarks by non-decision makers do not amount to direct evidence of discrimination.  *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 513 (3d Cir. 2004); *Price Waterhouse*, 490 U.S. at 277.  Plaintiff raises only one possible example of discriminatory behavior by a superior.  That example is a comment made by Scott Matthews "in the men's room" at some unspecified time: "You better retire and go to live in Florida."  Pl.'s Br. at 23 (emphasis omitted).  This allegation belatedly surfaces in plaintiff's response brief in opposition to defendants' motion.  Even crediting this untimely allegation, it is one minimal comment, not sufficiently revealing of discriminatory animus to constitute direct evidence of discrimination.

Since plaintiff cannot survive summary judgment by using direct evidence, the court instead uses the familiar three-step burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to assess whether plaintiff has adduced indirect evidence of discrimination.  Under the *McDonnell Douglas* framework, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *Id.*  If plaintiff meets this initial burden, defendants can rebut by providing a legitimate, non-discriminatory reason for their actions.  *Id.*  If defendants meet their burden of production, plaintiff has an opportunity to persuade the trier of fact by a preponderance of the

evidence that defendants' proffered legitimate reason was a mere pretext concealing discrimination. *Id*.

The court must decide as a matter of law whether plaintiff has established a *prima facie* case. *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003) (*per curiam*). To establish a *prima facie* case of discrimination, plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action despite being qualified; and (4) under circumstances giving rise to an inference of discrimination. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Pivirotto v. Innovative Sys., Inc*., 191 F.3d 344, 352 (3d Cir. 1999).

Defendants do not dispute that plaintiff has established the first three elements of a *prima facie* case of discrimination. Defendants acknowledge that plaintiff is over forty years old, a Colombian citizen, and a Hispanic man, and is therefore a member of a protected class. Defendants also acknowledge that plaintiff is qualified to work as a video editor and that he was fired. However, defendants contend that summary judgment is nonetheless warranted because plaintiff cannot meet the final element of the *prima facie* case. They argue that plaintiff has failed to produce sufficient evidence from which a factfinder could reasonably conclude that he was terminated under circumstances giving rise to an inference of discrimination.

Defendants assert that plaintiff "must show that others similarly situated to him in

all relevant respects were treated differently" in order to demonstrate that he was

terminated under circumstances that give rise to an inference of discrimination.  Def.'s

Br. at 13-14 (quoting *Red v. Potter*, 211 F. App'x 82, 84 (3d Cir. 2006)).  It is true that

"[t]he evidence most often used to establish this nexus is that of disparate treatment,

whereby a plaintiff shows that she was treated less favorably than similarly situated

employees who are not in plaintiff's protected class."  *Doe v. C.A.R.S. Protection Plus,*

*Inc.*, 527 F.3d 358, 365 (3d Cir. 2008).  This is the theory adopted by defendants, who

claim that plaintiff must find a "comparator" in order to establish disparate treatment.

Def.'s Br. at 13; Def.'s Reply Br. at 6.

The record does not contain evidence that defendants treated plaintiff less

favorably than others differently situated than plaintiff with regard to age or national

origin.  Defendants hired him when he was sixty-four years old, and his superiors were

well aware of his age for years before his termination.  There is no evidence that the

defendants' work environment was hostile towards minorities, and plaintiff mentions

several other employees who were members of minority groups, including at least one

other Hispanic employee.  *See* Pl.'s Dep. at 36-37.  Moreover, the evidence that plaintiff

proffers regarding his co-workers' allegedly discriminatory feelings about his age reduces

to nothing more than intra-office banter.  According to plaintiff, these comments were

made in 1999 and 2000,  which was years before his termination. *See* Pl.'s Br. at 7

(alleging that "younger co-worker[s] . . . perceived . . . plaintiff was unable to work

-10-

because [of] his age"); Pl.'s Dep. at 767-773.  Plaintiff does not allege that his superiors
made discriminatory comments about his age, and "[s]tray remarks by
non-decisionmakers or by decisionmakers unrelated to the decision process are rarely
given great weight, particularly if they were made temporally remote from the date of
decision."  *Pivirotto*, 191 F.3d at 359 (quoting *Ezold v. Wolf, Block, Schorr &
Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)).  Though "crude and unprofessional"
comments may be offensive, they are insufficient, without more, to create an inference of
discrimination.  *Id.* (quoting *Ezold*, 983 F.2d at 545-47).

However, even if the foregoing stray bits of evidence were thought to establish a
*prima facie* case of discrimination on the basis of age, race, and/or national origin,
defendants have satisfied their burden of providing a legitimate, non-discriminatory
reason for firing him.  In the months preceding his termination, plaintiff received several
warnings regarding his behavior, his timeliness, and his attitude towards other employees.
Def.'s Br. at 14; Pl.'s Br. at 8, 10, 14.  Two of these warnings were designated "Last and
Final" warnings.  Def.'s Br. at 14.  Defendants have offered evidence that plaintiff failed
to show up on a critical work day, Super Bowl Sunday.  Pl.'s Dep. at 424, 430.  Also, he
was overheard calling a co-worker a "bitch" and "the devil."  Finally, when he was
confronted about this unprofessional behavior towards his co-worker, he refused to
cooperate with the resulting investigation into his conduct.  Pl.'s Dep. at 436-37, 460-63,
465-66.

Because a reasonable factfinder could find that defendants have advanced a legitimate, nondiscriminatory reason for plaintiff's discharge, it therefore falls to plaintiff to present evidence sufficient to allow a reasonable factfinder to find by a preponderance of the evidence that defendants' warnings and investigation were mere pretext, and that discrimination of some sort was the true reason for plaintiff's termination. *Fasold v. Justice*, 409 F.3d 178, 185 (3d Cir. 2005). Plaintiff's evidence must be sufficient to provide a factfinder with reasonable grounds for concluding "both that the reason [defendants offered] was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis omitted).

Under the two-prong analysis established by *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994), plaintiff may establish pretext, and defeat summary judgment, by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[ ] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764; *see also Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067-72 (3d Cir. 1996) (en banc) (reaffirming *Fuentes* standard).

To satisfy the first prong, "plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally

-12-

find them unworthy of credence." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997); *accord Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 412-13 (3d Cir. 1999). A plaintiff may satisfy this standard by demonstrating, through admissible evidence, that the employer's articulated reason was not merely wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." *Keller*, 130 F.3d at 1109.

A plaintiff may also use the second prong of the *Fuentes/Sheridan* paradigm and point to evidence in the record which "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 764.

Plaintiff attempts to portray defendants' warnings to him regarding his performance and his conduct as an elaborate setup designed to discredit him. He specifically claims that his "Poor Performance Charges Were Fabricated," Pl.'s Br. at 6, that defendants' "Managers Set up [Plaintiff] as [a] Scapegoat," Pl.'s Br. at 10, and that the "Alleged Misconduct Claims Did Not Occurre [*sic*]," Pl.'s Br. at 15. However, he has admitted that he engaged in all of the conduct that led to the warnings and also admitted to insulting his co-worker and resisting the resulting investigation. *See* Pl.'s Dep. at 424, 437-39. There is nothing implausible or inconsistent about defendants' course of action in issuing plaintiff warnings and then terminating his employment. A reasonable factfinder could not conclude that plaintiff has satisfied his burden of persuasion under

-13-

the first *Fuentes* prong to show that defendants' reasons for his termination should not be believed.  Plaintiff also cannot meet the second prong of the *Fuentes* standard.  As discussed above in the context of plaintiff's *prima facie* case, the only pieces of evidence plaintiff offers are his speculations regarding his co-workers' feelings and some intra-office banter; this evidence is not sufficient to permit a reasonable factfinder to infer that discrimination was more likely than not a motivating cause of his termination.  The record contains no evidence that anything other than plaintiff's performance problems and conflicts with other employees motivated his termination.  Accordingly, plaintiff's discriminatory discharge claims do not survive summary judgment.

### B.  Retaliation and Harassment

Plaintiff's retaliation claim is analyzed under the same *McDonnell Douglas* burden-shifting scheme as his discrimination claims.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).  To make out a *prima facie* case of retaliation, plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action either after or contemporaneously with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action.  *Id.*  Defendants contend that plaintiff has not met his *prima facie* burden because he has "fail[ed] to establish that he engaged in any protected activity or that he suffered an adverse employment action for having done so."  Def.'s Br. at 18.

An employee engages in a protected activity if he either opposes an unlawful

employment practice or files a charge, testifies, assists, or participates in any manner in an

agency investigation regarding an allegedly discriminatory employment action.  29 U.S.C.

§ 623(d); 42 U.S.C. 2003e-3(a); 43 P.C.S. § 955(d).  Plaintiff has failed to establish that

he engaged in a protected activity that led to an adverse employment action. Although he

sent a letter to a union business agent giving "a detailed account of the issues of concern

relating to working conditions," plaintiff concedes that DelSpechio "ignored" the letter

and "never contacted [plaintiff's] managers."  Pl.'s Br. at 14; Pl.'s Dep. at 214-16;

DelSpechio Dep. at 88-89.  Therefore, he cannot establish a causal connection between

the writing of this letter and his subsequent termination.

Plaintiff also alleges harassment.  A plaintiff may bring a claim for harassment

when a "work environment [is] abusive to employees because of their race, gender,

religion, or national origin."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993);

*West v. Philadelphia Electric Co.*, 45 F.3d 744, 753 (3d Cir. 1995).  To bring an

actionable claim for harassment, a plaintiff must establish (1) that he suffered intentional

discrimination because of his membership in a protected class; (2) the discrimination was

severe and pervasive and detrimentally affected him; (3) the discrimination would have

detrimentally affected a reasonable person of the same protected class in that position;

and (4) the existence of *respondeat superior* liability.  *Jacobs v. City of Philadelphia*, 212

F. App'x 68, 70 (3rd Cir. 2006) (citing *West,* 45 F.3d at 753).  A factfinder considers

numerous factors, including "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001) (quoting *Harris*, 510 U.S. at 23).

Here, plaintiff alleges that he was subjected to verbal abuse by two co-workers on September 11, 2001.  He alleges that on that day the weather forecaster shouted aggressively, "[y]ou are not permitted any longer inside this building," and an editing supervisor insulted him by saying "Ari the FBI is looking for you."  Pl.'s Br. at 22; Pl.'s Dep. at 632, 637.  However, a reasonable factfinder could not conclude that these allegations rise to the level of "severe and pervasive" harassment, as they are, at most, mere offensive utterances on a single occasion.

Plaintiff further alleges that, on one occasion, a news reporter refused to work with him, objecting to his knowledge and skills.  Pl.'s Br. at 22.  He also asserts that he was subject to harassment and violence by Jamel Northern.  Pl.'s Br. at 19.  However, plaintiff fails to offer evidence that any of these actions were directed at him as a result of his membership in a protected class.

Given the above, a reasonable factfinder could not find for plaintiff on his harassment claim.

**IV.**

For the foregoing reasons, defendants' motion for summary judgment is granted. An appropriate order follows.

-16-

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARISTEDES MARTINEZ,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>FOX BROADCASTING CO., *et al.*,<br><br>　　　　　Defendants. | CIVIL ACTION<br><br>No. 06-04537 |

## ORDER

**AND NOW**, this 30th day of September, 2008, for the reasons stated in the accompanying opinion, defendants' motion for summary judgment, *see* Docket No. 42, is **GRANTED**.

　　　　　　　　　　　　　　　　　　　　　/s/ Louis H. Pollak

　　　　　　　　　　　　　　　　　　　　　　　Pollak, J.